[No. 20,031. In Bank.—December 29, 1884.]

## THE PEOPLE, RESPONDENT, v. FRANCISCO MARTINEZ, APPELLANT.

CRIMINAL LAW—EVIDENCE—VOLUNTARY ADMISSIONS BEFORE CORONER'S JURY
—MURDER.—Admissions voluntarily made before a coroner's jury by a defendant charged with a crime, are admissible in evidence against him.

ID.— DEGREE OF CRIME — PROVINCE OF JURY.— In a prosecution for murder, it is the province of the jury, under appropriate instructions from the court, to pass upon the question of malice, and determine the degree of the offense.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

Z. T. Carson, for Appellant.

*Attorney General Marshall,* for Respondent.

MORRISON, C. J.—On the eleventh day of August, 1884, a judgment of conviction was entered against the defendant by the Superior Court of Los Angeles county. The charge contained in the information was one of murder, perpetrated by the felonious killing with premeditation and malice aforethought of one Gabriel Chavez. The appeal is from the judgment, and also from the order of the court denying defendant's motion for a new trial.

In the evening of the twentieth day of June, 1884, the defendant and the deceased were seen in a wagon driven by the defendant, and proceeding from the city of Los Angeles in the direction of what is called the "Verdugo Cañon," the place of residence of the defendant. The defendant was driving, and, as the witness Mirandetti states, "was looking a little under the influence of liquor ; not very much, but you can't tell, sometimes. * * * The deceased wanted to stop, but Martinez wanted to go." The witness Rosa Bernero states that the defendant and deceased stopped at her grocery and liquor store, and bought four or five dollars' worth of groceries, which were paid for by the deceased. Chavez exhibited a small sum of money while there, and spoke of having a twenty-dollar gold piece. The witness says "they each had a drink in my place, but did not look as if they had been drinking." This was quite late in the afternoon or early in the evening, between 5 and 6 o'clock. Charles Gassen testified that he paid the deceased $10 in silver and $20 in gold, about 4 o'clock P. M. on the twentieth of June, at the freight depot, about a quarter of a mile from the residence of Mrs. Bernero. Frank Oakley, the next witness called for the prosecution, swore out a warrant for the arrest of the defendant, and went out with Officer Berry to make the arrest. There was a lengthy conversation between the defendant and the officer, in the course of which "the defendant appeared to be very nervous, and he denied it, until at last we got near the place where the murder had been committed, when Barry said 'they heard three shots,' whereupon the prisoner remarked, 'That is impossible—there was but one. I fired only one.' Berry then asked: 'Why did you kill him?' and the defendant

answered in Spanish, ' *Por que mi falto,*' because he insulted me." Defendant further stated to Officer Berry " that they both got out of the wagon, then they had a row, and he [defendant] shot him." That is the only reason given by the defendant for shooting the deceased, and his only explanation of the affair. The last-named witness was the coroner's clerk, and before him the following written statement was made and signed by the defendant voluntarily, without any threats or promises :

" I live at the Verdugo *rancho.* I work where I have got a piece of land rented. I rent from Theodora Verdugo. I was here in town last night almost to 6 o'clock. From here I went to the *rancho.* I went with Chavez. Chavez went with me toward the rancho. What happened was, that I killed him with a pistol. I fired once. He was standing on the ground and so was I. I shot him as he was standing in front of me. Chavez was higher up on the hill than I, when I shot him. We were both on the left-hand side of the creek. I got the pistol in my house. It was under the pillow of my bed."

To the introduction of this statement in evidence, defendant objected, and, the objection being overruled, exception was taken. This is the only exception in the case. In the case of *People* v. *Taylor,* 59 Cal. 640, this court held that an admission made by the defendant before a coroner's jury was admissible in evidence against him. The court there uses the following language : " The statement having been voluntary, the evidence was admissible, whether made in a judicial proceeding or any other." There was no error in admitting in evidence the statement made by the defendant in this case.

Doctor Nadeau, the physician who made the *post mortem* examination on the body of Chavez, says that the ball ranged downward from the second to the fifth rib, and from that fact the prosecution argues that defendant's statement that " Chavez was standing higher upon the ground than himself when the shot was fired," is false. Defendant denies that he took or saw any money on the person of the deceased, although it is shown by the testimony of several other witnesses that the deceased had money just before he was killed, and that none was found on the body. The defendant said nothing about the killing until he was arrested, and manifested much indifference about the

occurrence when interrogated about it.    The learned counsel for the defendant says in his brief: "It is true that the deceased came to his death at the time and place, and by the means alleged in the information, but we will always deny that the killing was done with malice aforethought."    That argument was made, we have no doubt, before the jury, but did not prevail there.    It was the province of the jury, under proper instructions from the court, to determine the degree of defendant's guilt; and, as was remarked in the case of *People* v. *Raten*, 63 Cal. 425: "It is said that, to constitute murder of the first degree, express malice must be proved; that it must be proved *aliunde;* and that it cannot be inferred or implied alone from the act done or the means used in doing it.    To this we have only to say that the questions as to malice were fairly submitted to the jury, the proper tribunal to pass on them, and that they were submitted with appropriate directions."

The same may be said of this case.    No fault whatever is found with the instructions of the court, and it may be remarked that the law of the case was fully and fairly stated by the court to the jury.    The killing was admitted by the defendant; the evidence shows that the place of killing was a secluded one, and the time about dark.    The judgment and order are affirmed.

MYRICK, J., SHARPSTEIN, J., THORNTON, J., McKINSTRY, J., and McKEE, J., concurred.