## ROBERT PORTER v. STATE.

No. A-3585. ·Opinion Filed Jan. 7, 1922.
(202 Pac. 1039.)

·(Syllabus.)

1. **Trial—Instruction on Credibility of Witnesses.** An instruction on the credibility of witnesses concluding with the language that, if the jury believe that any witness has testified falsely, they are at liberty to disregard the whole or any portion of the testimony of such witness, "unless such testimony is corroborated by other competent evidence," held not error.

(a) It is the better practice to instruct the jury generally on the credibility of witnesses, without reference to corroboration.

2. **Witnesses—Impeachment of Defendant—Improper Question as to Conviction Under Void Statute.** Where a defendant on trial had, prior to that time, been convicted of an alleged offense under a statute which had then been repeatedly declared unconstitutional and void by the highest appellate court of the state, it was error, for the purpose of affecting the credibility of the defendant, for the court to compel the defendant to admit that he had once been convicted under such void statute.

Appeal .from County Court, Payne County; Wilberforce Jones, Judge.

Robert Porter was convicted of the unlawful sale of intoxicating liquor and sentenced to serve 30 days in the county jail and pay a fine of $50, and he appeals. Reversed and remanded.

Freeman E. Miller, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall and E. L. Fulton, Asst. Attys. Gen., for the State. ·

BESSEY, J. Robert Porter, plaintiff in error, referred to in this opinion as the defendant, was, by information filed in the county court of Payne county, March 24, 1919, charged jointly with William Cooper with having sold one-half pint of whisky to Charles R. Scott on the 22d day of March, 1919. By verdict of the jury he was found guilty and his punishment

fixed at imprisonment in the county jail for a period of 30 days and to pay a fine of $50. From the judgment rendered on the verdict he appeals.

The verdict of the jury in this case rests upon the testimony of Charles R. Scott, a deputy sheriff, and that of Wm. Hubbard. The testimony of Charles R. Scott is to the effect that he was informed by Joe H. Floyd, another deputy sheriff, that the sheriff of Payne county was coming to Cushing that night, and instructed the witness Charles Scott to go to the part of town called North Town, for the purpose of discovering violations of the prohibitory law; that Joe Floyd gave the witness $4 with which to purchase whisky; that witness went to North Town and met a colored woman named Laura, and asked her if she knew where he could get some whisky; she replied that she would get him some if he would give her the money; that he did not trust the woman and did not pay her the money, but instructed her to bring the whisky to him; that after waiting for some time for the return of the colored woman he went into a restaurant operated by the defendant and William Cooper and asked Porter and Cooper if they knew where he could find the colored woman Laura—that she was going to get some whisky for him—and that Cooper told the witness that he could get him the whisky; that at this time the witness feigned intoxication and that Cooper and Porter got up and went out of the house, and that Cooper was gone about five minutes, when he came back and told the witness that the whisky would be there in a few minutes; that Cooper and the witness then walked outside in front of the restaurant and Porter, the defendant, came to them there and handed to Cooper a half-pint of whisky, which Cooper, in turn, handed to the witness; that the purpose of this witness in purchasing liquor was to get evidence to enable the officers to make some raids later that night, and that the sheriff paid this witness for procuring this testimony.

The witness Hubbard stated that he was with the witness Charles Scott the night in question, and testified that he saw the defendant, Porter, hand a bottle of whisky to another negro, who in turn handed it to Scott; that he knew of Scott's trying to buy liquor from others and that he bought a quantity of choc beer at another place that night.

The defendant testified in his own behalf, denying any knowledge of or participation in the transaction. William Cooper, the codefendant, who had been informed against for the same offense, pleaded guilty to the charge, and afterwards testified on behalf of the defendant, taking the entire guilt and responsibility upon himself and denying that Porter, the defendant here, had anything whatever to do with the procuring of the whisky. In addition to this, the affidavit of the defendant in support of a motion for a continuance, setting forth what an absent witness, Bennett White, would testify to if present, was admitted as to the testimony of White without objection, and was to the same effect.

If the testimony of the witnesses Scott and Hubbard is true, the defendant is guilty as charged; if the testimony of the defendant and his witnesses is true, the defendant should have been acquitted. From a careful reading of the entire testimony, it appears that this was a close case on the facts.

The assignments of error urged in defendant's brief are as follows: (1) An erroneous statement of the law concerning the weight to be given to the testimony of an impeached witness, as contained in instruction No. 7; (2) error of the court in permitting the state to show that the defendant had been convicted of the alleged crime of having and keeping a place with the intent to sell intoxicating liquor therein, from which judgment of conviction it was shown that an appeal had been taken to this court, and which appeal was then pending, undecided, in this court; (3) that the court erred in giving in-

struction No. 5; (4) that the court erred in refusing to give instruction No. 3 offered by the defendant.

The first assignment of error is leveled at that part of instruction No. 7 which concludes as follows:

"You are at liberty to disregard the whole or any portions of such witness' testimony unless the testimony of such witness be corroborated by other competent and material evidence."

In the earlier cases decided by this court such an instruction was held to be equivalent to instructing the jury that when there is such corroboration they must give full credence to the testimony of such witness. Rea v. State, 3 Okla. Cr. 276, 105 Pac. 289, 139 Am. St. Rep. 954; Gibbons, v. Ter., 5 Okla. Cr. 212, 115 Pac. 129; McKnight v. State, 7 Okla. Cr. 235, 122 Pac. 1118.

In the McKnight Case, supra, the law announced by Judge Armstrong was stated as follows:

"An instruction advising the jury that they are at liberty to disregard the testimony of any witness who they believe from the evidence has testified falsely, except in so far as his testimony is corroborated by other evidence or facts and circumstances in the case, should not be given. The jury cannot be bound by the court to believe the testimony of such witness, whether corroborated or not.

"When such an instruction is given by the trial court over the objections and exceptions of the accused, and the record discloses a close case on the facts, a judgment of conviction will be reversed."

But this court, in the case of Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901, has refused to follow the rule announced in the earlier cases cited, and states the rule, in substance, thus:

"The better plan is for the trial court not to attempt to give the jury instructions as to which witnesses or what testimony they may believe or not believe. A general instruction on the credibility of witnesses on that question is a sufficient guide for the jury."

But the giving of an instruction in the language here given, with the qualifying "unless corroborated" clause, is not ordinarily reversible error. The technical meaning of the language "unless the testimony of such witness be corroborated" is susceptible of the construction given in the earlier cases, but jurors ordinarily are not inclined to and often are not capable of technically analyzing the syntax of a sentence. They will view the subject treated from a common sense standpoint. From the reading of the whole instruction, considered with the other instructions, it is fair to assume that the court meant and the jury understood that the jury were at "liberty" to accept or reject the testimony of any witness, whether corroborated or not. We therefore adhere to the rule as announced in the Cole Case.

It is next contended that the court erred in the admission of certain testimony, over the objection of the defendant, showing that the defendant had been convicted of "keeping a place with the intent to sell intoxicating liquor therein," some time prior to the trial in this action, and that an appeal from this former conviction was then pending, undecided, in this court. This court has held in the case of Manning v. State, 7 Okla. Cr. 367, 123 Pac. 1029, that—

"Where defendant takes the witness stand in his own behalf, he may be asked if he has ever been convicted of a felony or of any offense showing want of moral character. The purpose of this evidence is to affect his credibility as a witness by showing that he has been convicted of a felony or of any offense indicating a want of moral character. The fact that an appeal is pending from such conviction will not render such evidence

inadmissible. It is the verdict of the jury upon such accusation that affects the credibility of the witness.''

While there are decisions in other states announcing a contrary doctrine, to the effect that a conviction is not final until the appeal is decided and that while such appeal is pending it cannot be shown that the defendant was convicted of such former offense, for the purpose of affecting the credibility of the defendant or for any other purpose, we think the law as announced in the Manning Case is supported by the weight of authority and the better reasoning.

However, in this case there is a factor not appearing in the Manning Case. It appears in the record, and this court will take judicial notice, that at the time of the trial of the case at bar this court had decided a number of other cases holding that the statute (section 4, c. 26, Session Laws of 1913) was unconstitutional. This statute is as follows:

''It shall be unlawful for any person to rent to another or to keep a place with the intention of, or for the purpose of manufacturing, selling, bartering, giving away, or otherwise furnishing, any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; or any liquors or compounds whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States. Any person violating any provision of this section shall be punished by a fine of not less than fifty ($50.00) dollars, nor more than two thousand ($2,000.00) dollars, and by imprisonment of not less than thirty (30) days in the county jail, nor more than five (5) years in the state penitentiary.''

It was beyond the power of the state Legislature to declare a mere criminal intent alone, unconnected with some

overt act, as constituting a crime. It necessarily follows that at the time of the trial of the offense here charged the charge embodied in and relied upon in the former conviction was not a crime, and had been so announced by this court prior to the time of the trial of this case below. Proctor v. State, 15 Okla. Cr. 338, 176 Pac. 771, and other cases following.

The fact that this defendant had been convicted for this so-called crime may have caused the jury to believe that his testimony was unworthy of credence and that he was probably guilty of the offense here charged, of selling intoxicating liquor, and under the peculiar circumstances here it was prejudicial error to permit the testimony of this former conviction to go to the jury. The defendant sought in every way possible to exclude this damaging testimony from the jury, and after the close of the testimony requested the court to instruct the jury in part as follows:

"The court instructs the jury that the Criminal Court of Appeals has repeatedly decided that it is the law of this state that the statute of the state criminal laws, attempting to make it a felonious crime to keep and maintain a place for the purpose and with the intention of selling intoxicating liquors therein contrary to the laws of this state, is unconstitutional, inasmuch as it seeks to make a mere intent to violate the law a crime. * * * The defendants were neither charged nor convicted of any offense against the laws of the state of Oklahoma that were valid and constitutional laws in force and effect."

The above instruction was refused. It would seem that, after the appellate court had decided this penal statute to be a nullity, in fairness to the defendant he would be entitled to an instruction that the statute so declared unconstitutional was without any force or effect.

As has been said, this was a close case on the facts. The defendant was convicted largely upon the evidence of a "cap-

per" or "decoy" evidence man, who testified that he was employed and paid for discovering and procuring evidence in this case.

We think the error in attacking the credibility of the defendant was serious, and, under the circumstances, prejudicial to the rights of the defendant; and the cause is therefore reversed and remanded.

DOYLE, P. J. and MATSON, J., concur.