### A. G. PROCTOR et al. v. STATE.

No. A-3737. Opinion Filed Jan. 2, 1923.
Rehearing Denied Jan. 27, 1923.
(211 Pac. 1057.)

#### (Syllabus.)

1. **Appeal and Error—Record—Remarks of Counsel in Argument.—** Alleged improper and prejudicial remarks of counsel in the argument to the jury will be considered by this court only where such remarks are made a part of the record. Mere naked allegations of prejudicial remarks in the motion for a new trial are insufficient.

2. **Appeal and Error—Harmless Error—Conduct of Jurors.—** Before final submission the inadvertent and momentary mingling of

jurors with others at the place where the jury took their meals, and telephone and other conversations in the presence of the bailiff, will not operate as a reversal, unless it appears that such conduct was probably prejudicial.

3.    **Same—Finding of Trial Court of Lack of Prejudice not Disturbed.**—Where alleged misconduct of the jury before final submission was investigated by the trial court on consideration of the motion for a new trial, the trial court's finding that there was no prejudice will not be disturbed.

4.    **Homicide—Instructions on Self-Defense—Sufficiency.**—Instructions relating to self-defense and the necessity or apparent necessity to act in self-defense held sufficient.

5.    **Homicide—Instruction as to Consideration of Evidence of Threats not Prejudicial.**—An instruction that evidence of threats, communicated or uncommunicated, might be considered for the purpose of determining which was the probable aggressor and what might be reasonably apprehended from the overt acts of the deceased, considered with the other instructions given, was not prejudicial as being an improper limitation of the purpose for which such evidence might be considered.

6.    **Homicide—Burden of Proof Where Plea of Self-Defense.**—Where the killing is admitted and the accused pleads self-defense, there may be a shifting of the burden of the evidence on that particular point, but the burden of proof on the whole case lies with the state. Self-defense may be and often is an affirmative defense. Section 5902, Rev. Laws 1910.

Appeal from District Court, Carter County; Thos W. Champion, Judge.

A. G. Proctor and another were convicted of manslaughter in the first degree, and they appeal. Affirmed.

S. J. Castleman, R. Brett, and Jas. H. Mathers, for plaintiffs in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J. A. G. Proctor and Orin Proctor, plaintiffs in error, in this opinion referred to as the defendants, were by information filed in the district court of Carter county

charged with the murder of Ray Massard. By verdict of the jury rendered October 31, 1919, each of the defendants was found guilty of manslaughter in the first degree. Defendant A. G. Proctor's punishment was assessed at confinement in the state penitentiary for a term of five years, and defendant Orin Proctor's punishment was fixed at four years. From the judgment pronounced in accordance with this verdict defendants appeal.

The evidence shows that on the Sunday preceding the Wednesday night on which the fatal difficulty occurred the deceased, Ray Massard, and another Syrian were playfully throwing at each other pieces of ice taken from an ice pack on the sidewalk in Healdton; that a piece of this ice accidentally struck defendant A. G. Proctor; that this defendant then asked Massard why he hit him, and Massard replied with a vile epithet, that it was an accident; that thereupon A. G. Proctor and Massard engaged in a fight in which defendant's head was cut with a piece of ice, and he sustained a broken or injured hand or wrist. On Wednesday evening Massard, in company with Albert Shadid, another young Syrian, was walking along the street near where defendants A. G. Proctor and Orin Proctor were sitting on the sidewalk, passing along in front of and beyond a pool hall near by; that after they had passed the defendants remained sitting on the curb a few minutes, and then went into the pool hall to get a drink of water, on their way to their rooms located a short distance to the rear of the pool hall. Defendants discovered that Massard and Shadid were in the pool hall, engaged in a game of pool. Defendants prepared to play a game on an adjoining table, and while they were chalking their cues preparatory to beginning the game, these two Syrians approached with their cues in their hands, in a fighting or belligerent attitude; according to other testimony, the defendants were the ag-

gressors. However this may be, all four then engaged in the difficulty, using their fists and the billiard cues, and fighting by striking, shoving and clinching. At the culmination of the difficulty A. G. Proctor struck the deceased, Ray Massard, with the heavy end of a broken billiard cue, fracturing his skull, from which wound he died shortly afterwards. It was claimed by defendant Orin Proctor that he took part in the fight only to protect his brother.

The physician who examined the wounded Syrian and operated on him testified that there was evidence of his head having been struck with some hard instrument at two different places, about an inch apart, and that there was also a flesh wound near the eye.

It was the theory of the state that the defendants followed these two Syrians into the pool hall and invited the difficulty; it was the theory of the defendants that the deceased and his companion were the aggressors. The evidence in support of these two theories is more or less conflicting, and it is difficult, if not impossible, to determine from the record before us which of the two was correct. A great deal of demonstrative evidence was introduced, in connection with a plat or drawing showing the location of the several pool tables, the cue racks, and the places where the participants in the fight stood and moved during the progress of the difficulty. The drawing or plat was not made a part of the record, and for that reason much of the testimony found in the record is obscure or unintelligible.

The errors complained of may be summarized as follows: (1) Alleged improper remarks of the county attorney made in the course of his argument to the jury; (2) alleged misconduct of the jury; (3) alleged errors of the court in his instructions to the jury.

The arguments of counsel to the jury were not preserved in the record, and the question of whether or not the county attorney indulged in improper remarks is not shown by the record proper. This court has no means of knowing what the remarks of counsel in their argument to the jury were, other than a declaration made in the motion for a new trial, and there is no proof of what was said by the county attorney. In a number of cases this court has held that mere excerpts from speeches of counsel ordinarily should not be considered by this court on appeal. Sanditen v. State, 22 Okla. Cr. 14, 208 Pac. 1040; Payne et al. v. State, 21 Okla. Cr. 416, 209 Pac. 334.

Defendants complain that the jury were permitted to separate and converse with others, before final submission, contrary to the orders of the court. We do not think the record upholds this contention. The fact that some of the jurors went to a telephone and called up their homes to notify their people at home that they were being held on the jury, or that they held other conversation not connected with the case, would not operate to the prejudice of the defendants. It also appears that at one time one of the jurors went into a bank to get a check cashed, in view and hearing of the bailiff, while the others stood on the sidewalk. We do not think this was prejudicial. All of the matters relating to the alleged misconduct of the jury seem to have been carefully considered by the court below upon presentation and hearing of the motion for a new trial, in which the bailiff and the members of the jury were called as witnesses. Any presumption of prejudice appearing, if any there was, was overcome by their testimony. Not every infraction of the admonitions of the court to the jury, to remain together in charge of the bailiff, will operate to reverse a cause on appeal. Lively v. State, 22 Okla. Cr. 271, 211 Pac. 92; Bird v. State, 22 Okla.

Cr. 263, 210 Pac. 925; Weatherholt v. State, 9 Okla. Cr. 161, 131 Pac. 185; Selstrom v. State, 7 Okla. Cr. 345, 123 Pac. 557.

Defendants claim that the instructions of the court to the jury, separately and collectively, were unfair to the defendants. This claim we think is also without foundation. The court submitted 31 written instructions, covering every feature of the issues involved, and while some of the statements contained in these instructions, considered apart from what preceded and what followed, may be subject to criticism, we think the instructions as a whole were exceedingly fair to the defendants. Ordinarily jurors are not inclined to indulge in refinements of syntax and construction; without prolix explanations the average juror understands the meaning of "reasonable doubt," "burden of proof," "probable aggressor," "right of self-defense," and "right to use such reasonable and necessary force to protect the person assailed or some other person from great bodily harm." The language of the court used in instruction No. 19, "So long as the necessity, or apparent necessity, exists to strike in self-defense or in the lawful defense of another, then the law gives him the right to do so; but when the necessity, or apparent necessity ceases, then the right to act ceases," in connection with the other instructions given in the case, sufficiently covers the law applicable to that issue. The refusal to give instruction No. 2 requested by defendants upon this issue was not error.

The requested instruction to the effect that threats, whether communicated or uncommunicated, may be considered by the jury for the purpose of determining the state of the deceased's feelings toward the defendants, for the purpose of determining who was the probable aggressor, and for the apprehend from the overt acts and demonstrations of the de- purpose of determining what the defendants might reasonably

ceased, was sufficiently covered by the instructions which were given.

Where the killing is admitted, as in this case, the claim of self-defense is an affirmative defense, requiring testimony to support it. This, in a sense, is a shifting of the burden of evidence, but is not inconsistent with the presumption of innocence as applied to all criminal cases. Jones v. State, 20 Okla. Cr. 233, 202 Pac. 189; Culpepper v. State, 4 Okla. Cr. 103, 111 Pac. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668; section 5902, R. L. 1910; 13 R. C. L. 811.

From what has been said, we deem it unnecessary and inadvisable to quote the lengthy instructions given by the court and the instructions requested by the defendants.

There being no apparent errors prejudicial to the rights of the defendants, or either of them, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.